E-FILED
Thursday, 12 November, 2026 09:55:39 PM
Clerk, U.S. District Court, ILCD

**IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>CHARLES G. MIZEUR,<br>Defendant. | Case No. 1:19-CR-10040-JEH-RLH |

**Order**

Now before the Court are Defendant Charles G. Mizeur's *pro se* Motion for Compassionate Release (D. 78) and counseled Amended Motion for Compassionate Release (D. 85).[1] The Government opposes the Motions. For the reasons set forth *infra*, the Amended Motion is DENIED and, accordingly, the *pro se* Motion is MOOT.

**I**

On September 17, 2019, an indictment charged Mizeur with attempted enticement of a minor, in violation of 18 U.S.C. § 2422(b), and soliciting an obscene visual depiction of a minor, in violation of 18 U.S.C. §§ 2252A(a)(3)(B) and (b)(1). On October 6, 2022, Mizeur pleaded guilty to both counts without a plea agreement.

On March 9, 2023, the Court sentenced Mizeur to concurrent terms of 120 months' imprisonment on each count, followed by concurrent terms of lifetime supervised release. The 120-month sentence represented a downward variance from the advisory Guidelines range of 168 to 210 months. Mizeur is incarcerated

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

at the Federal Medical Center in Springfield, Missouri, and his projected release date is May 16, 2031.

Mizeur submitted a request for compassionate release to the Warden on March 18, 2026, based on his age and medical condition. The Warden denied that request on March 26, 2026, explaining that Mizeur's chronic medical issues did not leave him disabled or capable of only limited self-care, that his medical condition had improved, and that he did not require assistance with activities of daily living. The Warden also determined that Mizeur had not served enough of his sentence to qualify under the elderly-inmate criteria.

Mizeur filed his *pro se* Motion for Compassionate Release on June 26, 2026. On July 1, 2026, the Court appointed the Federal Public Defender and directed counsel to file an amended motion or status report. Mizeur filed his counseled Amended Motion on September 3, 2026, and the Government thereafter filed its response. Because more than 30 days elapsed after the Warden received Mizeur's request, the exhaustion requirement set forth in 18 U.S.C. § 3582(c)(1)(A) is satisfied.

**II**

Over the course of more than one week, Mizeur communicated with a person whom he believed was a father offering his ten-year-old son for sexual activity. Using his cellular telephone, Mizeur communicated with the purported father for the purpose of engaging in prohibited sexual conduct with the purported ten-year-old child and requested images depicting the child engaged in sexual acts.

On September 6, 2019, Mizeur traveled to a prearranged meeting at a Motel 6 in Lincoln, Illinois, rented a room for the encounter, and then went to the lobby to meet the purported father. Mizeur admitted that he went to the motel to meet the father and his ten-year-old son, that he intended to engage in oral sex with the

child, and that he had requested images of the child performing oral sex on the father. Because the purported father was an FBI online covert employee, the offense involved no identifiable minor victim.

**III**

Mizeur is 65 years old and has been diagnosed with congestive heart failure, atrial fibrillation, mitral valve regurgitation, osteoporosis, degenerative arthritis affecting his back, hips, and knees, spinal impairment, HIV, gastroesophageal reflux disease, and a history of sepsis, pneumonia, and pertussis. A pacemaker was implanted on May 8, 2024, to address his cardiac rhythm. His other documented conditions include hypertension, hyperlipidemia, stage-three chronic kidney disease, generalized anxiety, and vitamin D deficiency.

Mizeur was hospitalized from July 1 through September 10, 2025, after developing sepsis and pneumonia, and he required high-flow oxygen before he could be weaned from supplemental oxygen at FMC Springfield. The illness and prolonged bed rest caused a loss of strength and stamina, and Mizeur thereafter experienced right knee and hip pain that limited his ability to walk longer distances.

Mizeur asserts that he spends more than 80 percent of his day in bed, cannot walk without assistance, and relies on a walker and assistance from other inmates. He reports that physical therapy has been limited to three sessions per week and that his progress has been slow. His March 2026 team review classified him as medically unassigned from work and imposed restrictions requiring a lower bunk, prohibiting ladders and upper bunks, excluding food-service work, and permitting regular duty only with medical restrictions.

Mizeur also reports exertional shortness of breath and musculoskeletal back pain when walking. A June 16, 2026, echocardiogram showed an ejection fraction of 60 to 65 percent, severe aortic regurgitation, and moderate mitral, tricuspid, and

pulmonic regurgitation. After Mizeur reported exertional dyspnea during a June 25, 2026, cardiology visit, cardiac catheterization was recommended and performed on August 31, 2026. Although the catheterization found no significant stenosis requiring intervention, Mizeur was referred to cardiothoracic surgery for severe aortic insufficiency and was advised to undergo further evaluation.

Mizeur states that he has received no incident reports during his incarceration and is classified as presenting a minimum recidivism risk. He has completed programs including Drug Education, the National Parenting Program, Money Smart for Older Adults, and courses addressing history, health, stress management, nutrition, physical fitness, and art. Before detention, Mizeur complied with all court-ordered conditions of pretrial release.

If released, Mizeur proposes to return to the Springfield, Illinois, residence he shared with his spouse. He proposes to reconnect with his longstanding physicians, obtain local cardiac care, and pursue physical therapy through the Southern Illinois University School of Medicine.

The Government relies on medical records showing that Mizeur's condition improved sufficiently for his transfer from the Nursing Care Center to a medical unit at FMC Springfield on December 11, 2025. The stated reason for the transfer was that Mizeur was independent in his activities of daily living and had met his treatment goals. At discharge, he was independent in his activities of daily living, used a wheelchair or walker for mobility, maintained a regular diet with a good appetite, required no wound care, and was initially discharged to a housing unit without restrictions, although some restrictions such as a lower bunk permit were added as noted above in 2026.

The records further show that Mizeur regained ambulation after his 2025 pneumosepsis, transitioned from a wheelchair to a four-wheel walker for stability, and no longer needed assistance with his activities of daily living. During a

December 19, 2025, evaluation, Mizeur could perform all activities of daily living independently, walk to the clinic using his wheeled walker, and converse without shortness of breath, although extended activity continued to cause some dyspnea. He displayed no cardiorespiratory distress, cough, or wheezing and no longer required supplemental oxygen or inhaled medication.

The cardiac records show improvement from an ejection fraction of 48 percent in February 2025 to 60 percent in October 2025. A later echocardiogram showed normal global systolic function and an estimated ejection fraction of 60 to 65 percent. Mizeur reported no chest pain, syncope, near-syncope, or significant palpitations during a subsequent cardiology follow-up.

FMC Springfield arranged ongoing cardiology care, including a pacemaker care consultation, an echocardiogram, a follow-up cardiology visit, cardiac catheterization, and referral to cardiothoracic surgery. Mizeur's pacemaker was checked without complication, with additional checks scheduled for January 8 and April 9, 2027. His treatment plan also provides for in-person device checks every six months and remote checks every three months.

Mizeur's HIV is treated with Odefsey, and a March 26, 2026, quarterly review documented complete medication compliance, an HIV viral load of 74, and a CD4 count of 695, although he previously had a non-detectable viral load. The treatment plan called for continuation of Odefsey and monthly viral-load monitoring until the level fell below 50. The institution also continued Mizeur's physical therapy three times per week to improve his strength and stamina.

As to rehabilitation, the Government notes that Mizeur has not completed any classes or programming since the prior review. His correctional plan calls for completing the Reentry Journey class by January 2027 and the Anger Management class by September 2027.

**IV**

**A**

Mizeur argues that extraordinary and compelling reasons arise from his serious and deteriorating medical conditions, advanced age, asserted minimal risk of recidivism, allegedly inadequate medical care within the Bureau of Prisons, successful pretrial supervision, rehabilitation, institutional record, and release plan, considered individually and collectively.

Mizeur principally relies on his health. He identifies congestive heart failure, atrial fibrillation, mitral valve regurgitation potentially requiring open-heart surgery, pacemaker dependence, spinal impairment requiring a walker, osteoporosis, arthritis, and HIV. He asserts that he spends more than 80 percent of each day in bed, cannot walk without assistance, requires help reaching the medication station, and experiences constant pain. He also contends that his classification as medically unassigned and "care required", together with his lower-bunk and other duty restrictions, demonstrates substantial physical limitations.

Mizeur further argues that he is 65 years old and is experiencing age-related physical deterioration caused by osteoporosis, arthritis, spinal degeneration, and cardiac decline. He acknowledges, however, that he has not served 75 percent of his 120-month sentence. He has served less than half of that ten-year sentence.

Mizeur also relies on his conduct before and during incarceration. He asserts that he successfully completed three years of pretrial home detention, has no institutional disciplinary reports, and is classified by the Bureau of Prisons as presenting a minimum recidivism risk. He asserts that his therapist opined that he poses no risk of reoffending. He has zero criminal-history points, no prior felony convictions, and two misdemeanor DUI convictions from 1994 and 2003. He maintains that these considerations, together with his family support and

proposed medical care after release, warrant a reduction to time served or home confinement.

**B**

The Government responds that Mizeur's conditions are serious but do not render him terminally ill or substantially diminish his ability to provide self-care within the Bureau of Prisons. On December 11, 2025, Mizeur was discharged from the Nursing Care Center to a medical unit because he was independent in his activities of daily living and had met his treatment goals. A December 19, 2025, evaluation reported that Mizeur could independently perform all activities of daily living, use a wheeled walker to reach the clinic, converse without shortness of breath, and exhibited neither cardiorespiratory distress nor apparent dyspnea.

The Government also disputes Mizeur's assertion that the Bureau of Prisons has failed to provide appropriate care. Although Mizeur alleged in July 2026 that he had not seen a cardiologist for more than eight weeks, he had seen Dr. Myers on June 25, 2026, when cardiac catheterization was recommended, and that procedure was completed on August 31, 2026. The catheterization revealed no significant stenosis requiring intervention. Other records report a left ventricular ejection fraction of 60 to 65 percent.

The Government further argues that Mizeur's rehabilitation is not exceptional. Mizeur has completed no additional classes or programming since his previous review. The Government contends that neither his educational courses nor his lack of disciplinary infractions is exceptional. It also disputes Mizeur's description of his former therapist's opinion. The therapist did not opine that treatment and medication eliminated his risk of reoffending, but instead stated that there was no way to know whether Mizeur would have followed through with sexual activity involving a minor.

Finally, the Government argues that the seriousness of Mizeur's offense and the limited portion of his sentence served preclude relief under 18 U.S.C. § 3553(a).

**V**

**A**

A court generally "may not modify a term of imprisonment once it has been imposed" unless modification is expressly authorized by statute or Rule 35 of the Federal Rules of Criminal Procedure. 18 U.S.C. § 3582(c), (c)(1)(B). Compassionate release under § 3582(c)(1)(A) is a narrow exception to that rule of finality. *Rutherford v. United States*, 146 S. Ct. 1320, 1326 (2026).

Section 3582(c)(1)(A) permits a court, after considering the applicable § 3553(a) factors, to reduce a term of imprisonment if extraordinary and compelling reasons warrant a reduction and the reduction is consistent with applicable policy statements issued by the Sentencing Commission. A defendant may file such a motion only after fully exhausting all administrative rights to appeal the Bureau of Prisons' failure to bring a motion on the defendant's behalf or after 30 days have elapsed from the warden's receipt of the defendant's request, whichever occurs first. 18 U.S.C. § 3582(c)(1)(A).

The exhaustion requirement is a mandatory claim-processing rule, although it is a waivable affirmative defense. *United States v. Sanford*, 986 F.3d 779, 782 (7th Cir. 2021); *United States v. Gunn*, 980 F.3d 1178, 1181 (7th Cir. 2020). The defendant bears the burden of establishing extraordinary and compelling reasons warranting a reduction. *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021).

The governing policy statement requires that extraordinary and compelling reasons warrant the reduction, that the defendant not present a danger to another person or the community, and that the reduction be consistent with the policy statement. U.S.S.G. § 1B1.13(a) (2025). Even when extraordinary and compelling

reasons exist, the Court must determine whether the applicable § 3553(a) factors support a reduction. 18 U.S.C. § 3582(c)(1)(A).

A serious medical condition may qualify when it is terminal or when it "substantially diminishes the defendant's ability to provide self-care" within a correctional facility. U.S.S.G. § 1B1.13, cmt. n.1(A)(i)-(ii). A defendant may also invoke the policy statement's age-related criteria, but Mizeur acknowledges that he has not served the required 75 percent of his sentence. U.S.S.G. § 1B1.13(b)(2). Additionally, rehabilitation alone is not an extraordinary and compelling reason under U.S.S.G. § 1B1.13(d). Even when extraordinary and compelling reasons exist, a defendant cannot obtain compassionate release without showing that a reduction is appropriate under the factors set forth at § 3553(a). 18 U.S.C. § 3582(c)(1)(A).

**B**

**1**

The Court does not minimize Mizeur's health problems. The record confirms several chronic medical conditions, including atrial fibrillation, heart failure, HIV, a cardiac pacemaker, mobility limitations, and valvular disease. But the relevant question is not whether Mizeur has serious diagnoses. It is whether those conditions are terminal or substantially diminish his ability to provide self-care in custody.

They do not. Mizeur's condition improved sufficiently for his transfer from Nursing Care Center housing to the medical-surgical service. He regained the ability to walk with a four-wheeled walker and no longer required assistance with activities of daily living. He was independent in his activities of daily living, appeared well, was alert and oriented, and was initially discharged to housing without restrictions.

The records also demonstrate continued evaluation and treatment at FMC Springfield rather than an inability to obtain necessary care. Mizeur received cardiology consultation, cardiac imaging, catheterization, pacemaker monitoring, medication management, and physical therapy. His pacemaker was checked without complication, with additional checks scheduled for January and April 2027. His HIV viral load was undetectable at times in the recent past, and his most recent treatment plan continued antiretroviral medication and monthly load monitoring to address a more recent rise in viral load. Accordingly, Mizeur has not shown that his medical conditions substantially diminish his ability to provide self-care or cannot be adequately managed in custody.

**2**

Mizeur's age does not independently establish an extraordinary and compelling reason. Although he is 65 and has chronic health conditions, he concedes that he has not served 75 percent of his sentence. His age-based argument therefore does not satisfy the stated elderly-inmate criteria. U.S.S.G. § 1B1.13(b)(2).

Nor does age, standing alone, demonstrate that release is warranted. The medical evidence shows improvement in Mizeur's mobility and independence notwithstanding his age. The Court therefore finds that Mizeur's age and asserted age-related deterioration do not independently constitute an extraordinary and compelling reason.

**3**

The record does not support Mizeur's contention that the Bureau of Prisons is unable to provide adequate medical care at FMC Springfield. His cardiology consultation occurred in June 2026, the recommended catheterization occurred in August 2026, and the record reflects continued monitoring of his cardiac conditions and pacemaker. Any delays or limitations identified by Mizeur do not

establish that his care has been so inadequate as to create an extraordinary and compelling basis for release.

**4**

Mizeur's compliance during pretrial supervision, absence of disciplinary infractions, acceptance of responsibility, and low criminal-history score are favorable considerations. They do not, however, establish extraordinary and compelling circumstances. As already noted, rehabilitation cannot, by itself, justify compassionate release, and the record does not show exceptional rehabilitative activity. *See* U.S.S.G. § 1B1.13(d). His minimum-risk classification and lack of disciplinary incidents similarly do not transform expected compliance into an extraordinary and compelling reason.

The therapist's letter also does not establish that Mizeur poses no risk of reoffending. At most, it reflects uncertainty about whether he would have completed the intended sexual activity. That uncertainty does not negate Mizeur's admitted purpose in traveling to the motel, renting a room, and attempting to meet the purported child and father.

**5**

Mizeur's successful pretrial home detention and proposed support and treatment arrangements do not independently constitute extraordinary and compelling reasons. Those circumstances may bear on whether release could be administered, but they do not establish eligibility for a reduction under § 3582(c)(1)(A).

Moreover, the Court considered Mizeur's pretrial compliance, therapist's assessment, mental and physical health, and hesitation reflected in the communications when it imposed the original sentence. Those considerations contributed to the downward variance from the advisory Guidelines range to the

statutory minimum sentence of 120 months. They do not now justify a further reduction.

**6**

The Court has also considered Mizeur's arguments collectively. A combination of circumstances may be materially different from each circumstance viewed separately, *United States v. Vaughn*, 62 F.4th 1072, 1073 (7th Cir. 2023), but aggregation does not cure the deficiencies here.

Mizeur has serious but managed medical conditions, improved mobility, independence in activities of daily living, ongoing access to medical treatment, a favorable institutional record, and a proposed release plan. He nevertheless has not shown a terminal condition, an inability to provide self-care, satisfaction of the age-based time-served requirement, exceptional rehabilitation, or a demonstrated inability of the Bureau of Prisons to provide necessary care. Considered together, these circumstances do not constitute an extraordinary and compelling reason for a sentence reduction.

**C**

Even if Mizeur had established an extraordinary and compelling reason, the balance of § 3553(a) factors weigh against compassionate release.

The offense was exceptionally serious. Mizeur spent more than a week communicating with a person he believed was offering a ten-year-old child for sexual activity. He requested sexually explicit images of the child, traveled to the arranged location, rented a hotel room, and intended to engage in oral sex with the child. The absence of an actual child resulted from the involvement of an undercover officer, not from Mizeur's abandonment of the intended conduct.

The Court also considers the proportion of the sentence served. Mizeur has served less than half of his ten-year sentence. That is a comparatively small portion of a sentence that already represented a substantial downward variance from the

advisory range. Attempted enticement of a minor carried a mandatory minimum term of ten years and a maximum term of life. Reducing that sentence to time served would not adequately reflect the seriousness of the offense, promote respect for the law, provide just punishment, or afford adequate deterrence.

Mizeur's age does not alter that conclusion. Although he is now 65, he was in his late 50s when he committed his offense conduct. Thus, this was not an offense committed in youth or early adulthood followed by decades of demonstrated reform. Mizeur was already an older adult when he deliberately pursued the encounter.

The Court recognizes Mizeur's acceptance of responsibility, limited criminal history, successful pretrial supervision, lack of institutional discipline, medical conditions, and lifetime term of supervised release. Those considerations do not outweigh the gravity of the conduct, the need for deterrence and public protection, the mandatory minimum selected by Congress, and the limited portion of the sentence served. A reduction would fail to give appropriate effect to the purposes of sentencing.

**VI**

For the reasons stated *supra*, the Motion for Compassionate Release (D. 85) is DENIED, and Mizeur's *pro se* Motion for Compassionate Release (D. 78) is MOOT in light of the denial of the counseled motion.

*It is so ordered.*

Entered on November 12, 2026

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE